## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| YURI C. ATKINSON and<br>DANIEL KEITH ATKINSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION |
| | ) | FILE NO.: _____ |
| WHIRLPOOL CORPORATION, INC., | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES FOR PERSONAL INJURY

COME NOW Yuri C. Atkinson and Daniel Keith Atkinson (collectively "Plaintiffs"), and state their claims for relief against Defendant Whirlpool Corporation as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Yuri C. Atkinson ("Mrs. Atkinson") is a resident and citizen of Thomas County, Georgia.

2.     Plaintiff Daniel Keith Atkinson ("Mr. Atkinson") is a resident and citizen of Thomas County, Georgia.

3.      At all times relevant to the claims set forth in this Complaint, Mrs. Atkinson and Mr. Atkinson were married.

4.      Defendant Whirlpool Corporation ("Whirlpool") is a Delaware corporation with its principal place of business in Benton Harbor, Michigan. Whirlpool is registered and transacts business in the State of Georgia.

5.      Defendant Whirlpool's registered agent is Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia, 30092.

6.      Defendant Whirlpool's registered office is in Gwinnett County, Georgia.

7.      Defendant Whirlpool transacts business in Georgia and has engaged in activity violative of Georgia tort law that caused injury to Yuri C. Atkinson and Daniel Keith Atkinson in Thomas County, Georgia.

8.      Defendant Whirlpool is subject to personal jurisdiction in this Court pursuant to Georgia's long-arm statute, O.C.G.A. § 9-10-91(1) and (3), and 28 U.S.C. § 1391.

9.      This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332 as there exists complete diversity of

citizenship between Mrs. Atkinson and Mr. Atkinson, as Plaintiffs, and Defendant Whirlpool Corporation, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

11.    Defendant Whirlpool is the world's largest manufacturer and marketer of major home appliances.

12.    Defendant Whirlpool's business includes the design, manufacture, and distribution of microwave hood combination appliances intended for installation directly above a cooktop.

13.    The bottom of the microwave hood combination appliance has vents intended to remove fumes, smoke, and exhaust that are produced while cooking on a cooktop located directly below the microwave hood combination appliance.

14.    On or about January 1, 2011, Plaintiffs began leasing a home located at 2091 Gatlin Creek Road, Thomasville, Georgia 31757.

15.    The home had various fixtures, including a cooktop stove and a microwave hood combination appliance located directly above the cooktop stove.

16.    The microwave hood combination appliance was designed, manufactured, marketed, and distributed by Defendant Whirlpool.

17.    The microwave hood combination was Whirlpool model number MH1160XSQ2, serial number TRU3710678, and was manufactured in September 2007.

18.    After moving into the home, Mr. and Mrs. Atkinson used the cooktop stove and the microwave hood combination appliance on a regular basis and the appliances performed as intended without any problems.

19.    On June 15, 2011, at approximately 11:30 a.m., Mrs. Atkinson began frying plantains on the cooktop stove in a large frying pan.

20.    Mrs. Atkinson turned on the ventilation system in the microwave hood combination.

21.    Mrs. Atkinson is originally from the Country of Colombia and normally fried plantains once or twice per week.

22.    Once the plantains were golden brown, Mrs. Atkinson turned off the cooktop stove and removed the plantains from the frying pan, placing them onto a paper towel using a slotted spoon.

4

23.     Mrs. Atkinson reached up and opened the microwave oven door and placed a container of salsa in the microwave oven.

24.     Mrs. Atkinson shut the microwave oven door and, as she did so, a piece of the microwave oven (the "door choke cover") broke and detached from the microwave oven.



25.     The broken piece fell into the frying pan of oil on the cooktop stove that had been used to cook the plantains.

26.     This caused a significant grease fire, which extended up to the microwave oven.

27.     Mrs. Atkinson's left hand and wrist were burned immediately, and she feared that the fire would burn down the house.  She quickly picked up the frying pan and removed it from the house, causing further burns to her left hand and wrist.  Mrs. Atkinson's hair was also burned by the fire.

28.     Mrs. Atkinson placed a telephone call to Mr. Atkinson, who was at work at the time.

29.     Mr. Atkinson heard the home's fire alarm in the background during the call and recognized fear in Mrs. Atkinson's voice as she attempted to tell him what had happened.

30.     Mr. Atkinson immediately began driving to the house.  At the same time, Mr. Atkinson's assistant placed a telephone call to 911.

31.     When Mr. Atkinson arrived at the house, he observed that Mrs. Atkinson's left hand was dripping flesh and that the skin on her left hand looked like melted candle wax.

32.     An ambulance had not arrived yet and Mr. Atkinson immediately took Mrs. Atkinson to Archbold Memorial Hospital in Thomasville, Georgia.

33.     Upon arrival at Archbold, Mrs. Atkinson was diagnosed with third degree burns to her left forearm, wrist, hand, and four of her fingers.

34.    After initial treatment in the emergency department at Archbold Memorial Hospital, Mrs. Atkinson was transferred to the Joseph M. Still Burn Center at Smith Northview Hospital ("Burn Center") in Valdosta, Georgia.

35.    After arriving at the Burn Center, Mrs. Atkinson was diagnosed with third degree burns to her left forearm, wrist, hand, and fingers of her left hand. The decision was made to operate on Mrs. Atkinson immediately.

36.    On June 15, 2011, Mrs. Atkinson underwent surgery that included the removal of dead tissue from her left forearm, wrist, hand, and four fingers and the application of cadaver skin grafts.

37.    On June 22, 2011, Mrs. Atkinson followed up at the Burn Center and she reiterated her complaint of left hand pain.  After the examination, an Acticoat dressing was placed on her left forearm, wrist, hand, and four of her fingers, pending scheduling of future skin graft surgery.

38.    On June 29, 2011, Mrs. Atkinson underwent a second dead skin removal from her left forearm, wrist, hand, and four of her fingers.  Skin was grafted from Mrs. Atkinson's left buttocks and applied to the burn site because the skin graft of June 15, 2011 was not successful.

39.    Mrs. Atkinson was seen in follow up at the Burn Center on a weekly and then bi-weekly basis following the surgical procedures.  Mrs. Atkinson has undergone and continues to undergo physical therapy in an effort to maximize her ability to use her left forearm, wrist, hand, and four of her fingers.

40.    Despite the efforts of Mrs. Atkinson and her medical providers, Mrs. Atkinson has not regained full use of her left forearm, wrist, hand, and four of her fingers.

41.    Mrs. Atkinson's left forearm, wrist, hand, and four of her fingers on her left hand are permanently scarred and disfigured.

### PLAINTIFFS' FIRST CLAIM FOR RELIEF:
### STRICT LIABILITY - DESIGN DEFECT

42.    The microwave hood combination appliance was defective because the materials selected for use as the door choke cover of the microwave consisted of plastic with insufficient resistance to the heat and normal wear that occurs with regular use of the microwave hood combination appliance.

43.    An alternative, safer design of the microwave hood combination appliance was available and feasible at the time the microwave hood combination appliance at issue was designed and manufactured.

44.     Specifically, Defendant Whirlpool could have chosen to use a plastic material with greater heat resistance and greater ability to withstand normal wear.

45.     Alternatively, Defendant Whirlpool could have used steel, which Defendant Whirlpool currently uses for some of its microwave hood combination appliances.

46.     The defective conditions of the microwave hood combination appliance existed both when the microwave hood combination appliance left its point of manufacture, and at the time it was sold to the builder or owner of the house that Plaintiffs were renting.

47.     Neither Plaintiffs nor anyone else modified or altered the microwave hood combination appliance in any respect after it was manufactured.

48.     Because the risk to human life and safety presented by the microwave hood combination appliance outweighs the utility of the particular design employed by Defendant Whirlpool, the microwave hood combination appliance was defective when it was manufactured and remained defective at the time it failed on June 15, 2011 and caused severe, permanent injuries to Mrs. Atkinson.

49.     The defective condition of the microwave hood combination appliance proximately caused or contributed to Mrs. Atkinson's injuries.

9

50.     Defendant Whirlpool is strictly liable to Plaintiffs on account of its defective design of the microwave hood combination appliance for all of Plaintiffs' injuries and damages.

### PLAINTIFFS' SECOND CLAIM FOR RELIEF: STRICT LIABILITY-MANUFACTURING DEFECT

51.     To the extent the June 15, 2011 failure of the microwave hood combination appliance was not due to a design defect, the failure was caused by a manufacturing defect in the particular unit that failed and caused injury to Mrs. Atkinson.

52.     Specifically, the piece of the microwave hood combination appliance that detached and fell into the hot oil was not properly manufactured at the time the unit was manufactured and was a nonconforming product for this reason.

53.     Specifically, the piece of the microwave hood combination appliance that detached and fell into the hot oil was not properly attached at the time the unit was manufactured and was a nonconforming product for this reason.

54.     The defective conditions of the microwave hood combination appliance existed both when the microwave hood combination appliance left its

point of manufacture, and at the time it was sold to the builder or owner of the house that Plaintiffs were renting.

55.    Neither Plaintiffs nor anyone else modified or altered the microwave hood combination appliance in any respect after it was manufactured.

56.    The manufacturing defect(s) presented an unreasonable risk to human life and safety.

57.    The manufacturing defect(s) proximately caused or contributed to Mrs. Atkinson's injuries.

## PLAINTIFFS' THIRD CLAIM FOR RELIEF:
## NEGLIGENCE

58.    Defendant Whirlpool had a duty to design, manufacture, and distribute products, including the microwave hood combination appliance, in a manner which was not unreasonably dangerous to consumers.

59.    Defendant Whirlpool failed to exercise reasonable care in designing and manufacturing the microwave hood combination appliance because it knew, or in the exercise of reasonable care, should have known that the material used for the door choke cover, the underside of the unit, handle, and area around the handle

created an unreasonable risk of failure and resultant harm to users of the microwave hood combination appliance.

60.     Defendant Whirlpool is liable to the Plaintiffs for all of their injuries and damages which directly and proximately resulted from Defendant Whirlpool's negligent design of the microwave hood combination appliance.

**PLAINTIFFS' FOURTH CLAIM FOR RELIEF:**
**PUNITIVE DAMAGES**

61.     Prior to June 15, 2011, Defendant Whirlpool had received consumer complaints reporting breakage and/or failure of the door choke cover and/or handle of microwave ovens of the same design and/or manufacture as the microwave hood combination used by Mrs. Atkinson.

62.     Despite its knowledge of defects as described herein, Defendant Whirlpool did not take any action to warn consumers of the danger or to remedy the dangerous condition.

63.     Defendant Whirlpool's conduct in placing the microwave hood combination appliance in the stream of commerce in a defective condition amounts to intentional misconduct, malice, wantonness, fraud, and that entire want of care

12

that will justify an award of punitive damages in addition to any compensatory damages.

## PLAINTIFFS' FIFTH CLAIM FOR RELIEF:
## BAD FAITH

64.    Defendant Whirlpool's conduct in knowingly placing a highly dangerous product in the stream of commerce invokes a specie of bad faith that warrants an award of expenses of litigation to Plaintiffs, including their reasonable attorney's fees in bringing and prosecuting this civil action, as provided by O.C.G.A. § 13-6-11.

## DAMAGES

65.    The factual allegations set forth above are reincorporated by reference.  As a direct and proximate result of Defendant Whirlpool's acts and omissions described in this Complaint, Mrs. Atkinson has suffered the following injuries:

A)     severe and debilitating burns to her left forearm, wrist, hand, and four of her fingers;

B)     mental and physical pain and suffering;

13

C)      permanent disfigurement to her left forearm, wrist, hand, and four of

her fingers and additional disfigurement resulting from the skin

grafting surgery;

D)      loss of full use of her left hand and arm;

E)      loss of earning capacity; and,

F)      medical expenses for her care and treatment.

66.      As a direct and proximate result of Defendant Whirlpool's acts and omissions described in this Complaint, Mr. Atkinson, the husband of Mrs. Atkinson, has suffered a loss of consortium.

67.      WHEREFORE, Plaintiffs Yuri C. Atkinson and Daniel Keith Atkinson demand judgment against Defendant Whirlpool as follows:

1.      For compensatory damages, including:

a.      Medical expenses;

b.      Loss of earning capacity;

c.      Pain and suffering;

d.      Loss of enjoyment of life; and,

e.      Loss of consortium.

2.      For punitive or exemplary damages;

14

3.      For all applicable statutory damages;

4.      For an award of attorneys' fees and costs;

5.      For prejudgment interest and the costs of suit, where awardable; and,

6.      For such other and further relief as this Court may deem just and proper.

TRIAL BY JURY DEMANDED.

**WAYNE GRANT, P.C.**
*Attorneys for Plaintiff*

/s *Wayne Grant*
Wayne Grant
Georgia State Bar No. 305550
wgrant@waynegrant.com
Kimberly W. Grant
Georgia State Bar No. 591510
kgrant@waynegrant.com
Jonathan A. Parrish
Georgia State Bar No. 263008
jparrish@waynegrant.com

Atlanta Financial Center – North Tower
3353 Peachtree Road, N.E. – Suite 550
Atlanta, Georgia 30326
404-995-3955 – Phone
404-995-3950 – Facsimile

MONTLICK & ASSOCIATES, P.C.
*Attorneys for Plaintiff*


/s *Kathy Edwards-Opperman*
Kathy Edwards-Opperman
Georgia State Bar No. 241460
keopperman@montlick.com

17 Executive Park Drive - Suite 300
Atlanta, Georgia 30329
404-235-5000 – Phone
404-321-3323 – Facsimile